IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 23, 2014 Session

## MICHELLE RYE, and her Husband, RONALD RYE v. WOMEN'S CARE CENTER OF MEMPHIS, MPLLC d/b/a RUCH CLINIC, a Tennessee for-profit Limited Liability Company, and DIANE LONG, M.D.

### Interlocutory Appeal from the Circuit Court for Shelby County
No. CT-000920-09     Gina C. Higgins, Judge

_____

### No. W2013-00804-COA-R9-CV - Filed March 10, 2014

_____

This interlocutory appeal concerns the trial court's grant of partial summary judgment to the Defendant/Appellee medical providers on various issues. The Plaintiff/Appellant couple filed a complaint for damages stemming from the medical providers' failure to administer a RhoGAM injection during wife's pregnancy. The couple alleged causes of action for compensatory damages associated with medical malpractice, negligent infliction of emotional distress, and disruption of family planning. The trial court granted summary judgment to the medical providers on the wife's claim for future medical expenses, husband's claim for negligent infliction of emotional distress, and the couple's claim for disruption of family planning. The trial court declined to grant summary judgment on wife's physical injury claim, her negligent infliction of emotional distress claim, and the claim that wife could present evidence of the disruption of her family planning as evidence in her negligent infliction of emotional distress claim. We reverse the trial court's grant of summary judgment on wife's claim for future medical expenses associated with future pregnancy and husband's claim for negligent infliction of emotional distress, which he may support with evidence concerning the disruption of the couple's family planning. The trial court's ruling is affirmed in all other respects.   Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and D. MICHAEL SWINEY, J., joined.

Gary K. Smith and C. Philip M. Campbell, Memphis, Tennessee, for the appellant, Michelle Rye and Ronald Rye.

William H. Haltom, Jr., and Margaret F. Cooper, Memphis, Tennessee, for the appellees, Women's Care Center of Memphis, MPLLC d/b/a Ruch Clinic and Diane Long, M.D.

**OPINION**

**Background**

The Plaintiffs/Appellants Michelle Rye and her husband Ronald Rye (together, "the Ryes") filed a complaint on February 24, 2009 alleging medical malpractice against the Defendants/Appellees Women's Care Center of Memphis, MPLLC, d/b/a Ruch Clinic ("the Clinic"), and Diane Long, M.D., (together with the Clinic, "Appellees"), stemming from Dr. Long's failure to give Mrs. Rye a RhoGAM injection during the 28th week of her third pregnancy.[1] According to the complaint, Mrs. Rye, who has Rh negative blood, did not receive an injection of RhoGAM during her third pregnancy, and, as a result, she became Rh-sensitized—meaning she has antibodies in her body to Rh positive blood.[2] The Ryes asserted that this failure was a deviation from the recognized standard of care and that it caused damages to the Ryes, including physical injuries to Mrs. Rye, disruption of family planning, infliction of emotional distress on both Mrs. and Mr. Rye, and future medical expenses likely to be incurred by Mrs. Rye for any future pregnancies or blood transfusions. According to the Ryes' complaint, they intended to have additional children, but because of the increased risks to future pregnancies due to Mrs. Rye's Rh-sensitization, they have altered their family plans by attempting to avoid future conception.

The Appellees answered the complaint on April 7, 2009, admitting that the failure to provide the RhoGAM injection was a deviation from the standard of care, but denying that the Ryes had suffered any damages as a result. Discovery ensued, including the depositions of the parties. The Ryes both testified that after the birth of their third child, Dr. Long referred the couple to Dr. Michael Schneider, a doctor who specializes in high risk pregnancies. According to both the Ryes, Dr. Schneider told them that any future pregnancy would be "high risk" due to Mrs. Rye's Rh-sensitivity. Further, Dr. Schneider informed the Ryes that the risks would increase for every successive pregnancy due to an increased immune system response from Mrs. Rye. Due to the possible complications of any future pregnancy, the Ryes testified that they have chosen to attempt to limit their family through the use of natural family planning methods. The Ryes testified, however, that because of their

---

[1] The Ryes' third child was born without complications.

[2] As discussed in detail below, the risk associated with Rh-sensitization is that once a mother becomes Rh-sensitized, if a mother conceives and carries a child with Rh positive blood, the mother's antibodies may attack the baby's blood cells, leading to injuries to the unborn child.

-2-

religion, they are unable to pursue other forms of contraception. Specifically, Mrs. Rye testified that she and her husband sought a special dispensation from their church to allow Mrs. Rye to undergo voluntarily sterilization, as this would remove some of the anxiety about a possible future pregnancy. However, Mrs. Rye testified that the church would not give a dispensation for a voluntary sterilization unless the mother's life was at risk. Mrs. Rye testified to the fear and anxiety caused by this situation, especially given the risks she learned any future child may face. Mrs. Rye testified that Dr. Schneider "kind of actually discouraged us from having more children." For this reason, Mrs. Rye testified that she and her husband have altered their behavior in order to be less "risky" with regard to the possibility of having another child. Despite her anxiety, neither Mrs. Rye nor her husband ever received any psychological or psychiatric counseling.

Dr. Long testified in her deposition concerning the circumstances surrounding the failure to give Mrs. Rye a RhoGAM injection at the appropriate time during her pregnancy. According to Dr. Long, who served as Mrs. Rye's obstetrician during her third pregnancy, Mrs. Rye failed to receive the RhoGAM injection because her blood type was not properly flagged on her chart when she was admitted as a Clinic patient or when she submitted to lab tests at the Clinic. Dr. Long also testified that due to issues with Mrs. Rye's prior pregnancies, she was scheduled for different tests than those that were usually administered; accordingly, Mrs. Rye did not have blood glucose testing around her 28th week of pregnancy, when the RhoGAM is supposed to be administered.

Dr. Long also explained the concerns associated with failing to give a RhoGAM injection at an appropriate time during a pregnancy. The concerns, according to Dr. Long, are not to the mother or the current baby, but to any subsequent baby that the mother may conceive. According to Dr. Long, when a pregnant woman is Rh negative, has become Rh-sensitized,[3] as is the case with Mrs. Rye, and carries a child who is Rh positive, the antibodies in the mother's blood can "cross through the placenta and attack the baby's red blood cells and cause those baby's red blood cells to lice, or damage them so that the baby's blood count could drop [causing the baby to become anemic.]" Dr. Long further testified that although the actual risk of death to a fetus[4] was low due to aggressive treatment and

[3] Dr. Long testified that a pregnant woman becoming Rh-sensitized due to failure to give a RhoGAM injection is, in itself, a rare event. However, it is undisputed for purposes of summary judgment that Mrs. Rye became Rh-sensitized as a result of Dr. Long's failure to administer a RhoGAM injection at the appropriate time.

[4] A fetus in this context is defined as "the human being in *utero* after the embryonic period and the beginning of the development of the major structural features." *Mosby's Medical, Nursing, and Allied Health Dictionary* 628 (5th ed. 1998). In this case, we refer to any offspring that Mrs. Rye may conceive, regardless
(continued...)

monitoring, there was still a "low risk" of death to a child conceived under this scenario. According to Dr. Long, however, these risks increase with subsequent pregnancies. Dr. Long further admitted that the decision to have or not have a child was a "huge deal" and that the Ryes' decision to attempt to prevent future pregnancies was reasonable given the potential risks.

On July 13, 2010, the Appellees moved to dismiss the Ryes' complaint, or in the alternative, for a grant of summary judgment, contending that the Ryes had suffered no compensable damages or injuries. The Appellees filed the affidavit of their expert witness Dr. Thomas Stovall who opined that the risks to an Rh-sensitized woman are "extremely remote" and that it could not be said with any reasonable degree of medical certainty that an Rh-sensitized woman would ever sustain any injuries or damages. Dr. Stovall also opined that it could not be said with any degree of medical certainty that if an Rh-sensitized woman were to conceive another child, there would be any injury to such child.

In response, the Ryes submitted the affidavit of expert witness Dr. Joseph Bruner who concluded that Mrs. Rye has sustained an injury because, biologically, she is not the same person she was before she became Rh-sensitized. According to Dr. Bruner, Ms. Rye now suffers from "diseased blood" that makes future pregnancies less safe to her future unborn children. Specifically, Dr. Bruner opined that: (1) it is more likely than not that Mrs. Rye will become pregnant again because the Ryes have declined to use contraceptives due to their religious beliefs; (2) if Mrs. Rye becomes pregnant, there is an approximately 70% chance that the fetus will have Rh positive blood; and (3) if Mrs. Rye becomes pregnant and the child has Rh positive blood, it is more likely than not that the fetus will have moderate to severe disease and require invasive procedures. These complications can include: (1) enlarged spleen and liver, causing damage or rupture; (2) excessive bleeding due to low blood cell count; (3) erythroblastosis fetalis;[5] (3) hyperbilirubinemia, causing jaundice, or a yellow tone of the skin and eyes; (4) kernicterus, a condition that can lead to deafness, speech problems, cerebral palsy, or mental retardation; (5) high levels of insulin and low blood

---

[4](...continued)
of its stage of development, interchangeably, as a "fetus," "unborn child," or "child."

[5] Erythroblastosis fetalis is a condition that can cause "severe anemia, jaundice, enlargement of the liver and spleen, which, without intervention, can lead to hypoxia, cardiac failure, generalized edema, respiratory distress, and death." *Mosby's Medical, Nursing, and Allied Health Dictionary* 586 (5th ed. 1998). Anemia is described as "a decrease in hemoglobin in the blood levels below normal range," which can cause fatigue, dizziness, headache, insomnia, and pallor. *Id.* at 86. Hypoxia is "inadequate oxygen at the cellular level, characterized by tachycardia, hypertension, . . . dizziness, and mental confusion." *Id.* at 804. Tachycardia is a condition that causes an increased heart rate. *See id.* at 1584. Edema is an accumulation of fluid in the body. *See id.* at 535.

sugar; (6) and hydrops fetalis, a condition where fluid accumulates in the baby's body, inhibiting breathing, interfering with lung growth, and possibly causing death; (7) and anemia, which may lead to heart problems. Dr. Bruner further opined that with "good modern medical treatment, most babies can be saved." According to Dr. Bruner, the procedures used to determine whether the child is at risk of complications also create risks to both the fetus and to the mother. He further testified that Mrs. Rye's irreversible Rh-sensitization sets her up for an increased risk of life-threatening problems should she require a blood transfusion. Specifically, Dr. Bruner testified that because of Mrs. Rye's Rh-sensitization, any time that Mrs. Rye experiences a medical issue that requires a blood transfusion, including a future pregnancy or a car accident, she will be required to wait longer for the procedure, which wait can cause additional complications.

On July 15, 2011, the trial court held a hearing on the Appellees' Motion to Dismiss, or in the alternative, for Summary Judgment. At the conclusion of the hearing, the trial court granted the motion in part and denied it in part. Specifically, the trial court granted summary judgment to the Appellees for Mrs. Rye's claim for future medical expenses. The trial court, however, denied summary judgment on the remaining claims, but stated that it would entertain a future motion for summary judgment on those issues. On August 10, 2011, the trial court entered an order granting the Appellees' Motion as to "all claims for future damages for injuries to [Mrs.] Rye that relate to prospective injury relating to blood transfusions or future pregnancies." The trial court found that such damages had yet to be sustained by Mrs. Rye and "it is a matter of speculation whether they will ever be sustained." The trial court, however, specifically denied summary judgment to the Appellees on the issues of whether the Ryes "ha[d] suffered emotional distress and [whether Mrs.] Rye has Rh disease because of the claimed negligence of the [Appellees]."

On January 24, 2012, approximately two weeks prior to the scheduled trial date in this case, the Appellees filed a Supplemental Memorandum in support of their Motion to Dismiss, or in the alternative, for Summary Judgment, arguing that Mrs. Rye had suffered no physical injury or illness as a result of the Appellees' breach of the standard of care. In addition, the Appellees argued that both Mrs. Rye's and Mr. Rye's claims for emotional distress were "stand alone" claims requiring expert proof. The thrust of the Appellees' arguments was that the Ryes had "developed no proof to support [their] claim[s]." According to Appellees, the Ryes "have been given ample opportunity to develop proof in this case that they have, in fact, sustained actual damages as a result of the failure of the defendants to administer a RhoGAM injection. The [Ryes] have proved no such damages."

The trial court heard oral argument on the Appellees' renewed motion on February 6, 2012, the morning of the scheduled trial in this cause. At the hearing, the trial court ruled that Mr. Rye had only a "stand alone" claim for emotional distress because he suffered no

physical injury, and that without expert testimony to support such claim, it must be dismissed. The trial court, however, denied summary judgment to the Appellees on the issue of whether Mrs. Rye has suffered a physical injury, finding that "there has been a change in her blood." At that time, counsel for the Ryes orally moved the trial court to grant an interlocutory appeal. The trial court then granted leave for the Ryes to seek an interlocutory appeal, specifically ruling that the parties should seek an interlocutory appeal of all the trial court's rulings in the case.

Over six months later, on November 28, 2012,[6] the trial court entered an order granting in part and denying in part the Appellees' Motion to Dismiss, or in the alternative, for Summary Judgement. Specifically, the Court denied summary judgment on the issue of whether Mrs. Rye had suffered a physical injury for purposes of her emotional distress claim. The trial court granted summary judgment with regard to: (1) Mr. Rye's claim for emotional distress, finding that his claim was a "stand alone" claim that was not supported by the required expert testimony; and (2) the Ryes' claim based on an independent cause of action for disruption of family planning. The trial court held, however, that its ruling did not preclude Mrs. Rye "from presenting evidence of how her family plans changed as an element of damages going to emotional distress." The trial court reiterated its earlier ruling regarding future damages.

On December 26, 2012, the Ryes filed a written motion seeking an interlocutory appeal in the trial court on the issues of: (1) whether the trial court correctly denied summary judgment on the issue of whether Mrs. Rye has diseased blood , and therefore, has a physical injury as a result of the Appellees' negligence; (2) whether the trial court correctly denied summary judgment on the issue of whether Mrs. Rye's emotional distress claim, based on the finding that the claim is not a "stand alone" claim requiring expert proof; (3) whether the trial court correctly held that Mrs. Rye's claim for future medical expenses was too speculative to submit to the jury; (4) whether the trial court correctly granted summary judgment to the Appellees' on Mr. Rye's claim for emotional distress; and (5) whether the trial court correctly granted summary judgment to the Appellees as to whether the Ryes have an independent, cognizable claim for disruption of family planning. On December 28, 2012, the Appellees filed their own motion seeking an interlocutory appeal on the issues of whether (1) Mrs. Rye's suffered an actual physical injury for purposes of her emotional distress claim; and (2) whether Mrs. Rye should be allowed to submit evidence of "how her family plans changed as an element of damages going to emotional distress."

On March 22, 2013, the trial court granted the Ryes' Motion for an Interlocutory

---

[6] The reason for the delay is not stated in the record.

Appeal, certifying all issues raised in the Ryes' motion.[7] On April 2, 2013, the Ryes filed an application in this Court for an Interlocutory Appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.[8] On the same day, the Appellees filed their own application

---

[7] The trial court did not rule on the Appellees' Motion for an Interlocutory Appeal. However, from our review of the record, the Ryes' Motion for an Interlocutory Appeal raised all issues considered by the trial court, including those issues on which the Ryes prevailed. Therefore, the trial court's order granting the Ryes' Motion for an Interlocutory Appeal also properly disposed of the Appellees' Motion as well.

[8] Rule 9 of the Tennessee Rules of Appellate Procedure outlines the procedure for seeking an interlocutory appeal of a trial court's order. Rule 9 provides, in relevant part:

> (a) **Application for Permission to Appeal; Grounds.** Except as provided in rule 10, an appeal by permission may be taken from an interlocutory order of a trial court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals only upon application and in the discretion of the trial and appellate court. In determining whether to grant permission to appeal, the following, while neither controlling nor fully measuring the courts' discretion, indicate the character of the reasons that will be considered: (1) the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective; (2) the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and (3) the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment. Failure to seek or obtain interlocutory review shall not limit the scope of review upon an appeal as of right from entry of the final judgment.
>
> (b) **Procedure in the Trial Court.** The party seeking an appeal must file and serve a motion requesting such relief within 30 days after the date of entry of the order appealed from. When the trial court is of the opinion that an order, not appealable as of right, is nonetheless appealable, the trial court shall state in writing the reasons for its opinion. The trial court's statement of reasons shall specify: (1) the legal criteria making the order appealable, as provided in subdivision (a) of this rule; (2) the factors leading the trial court to the opinion those criteria are satisfied; and (3) any other factors leading the trial court to exercise its discretion in favor of permitting an appeal. The appellate court may thereupon in its discretion allow an appeal from the order.

(continued...)

for an interlocutory appeal. On May 24, 2013, this Court entered an order granting both applications. This Court limited review to the following issues:

1.     Since the [Appellees] have admitted that the failure to provide a RhoGAM injection to [Mrs.] Rye was a deviation from the recognized standard of acceptable professional obstetric and gynecological practice, whether the trial court properly granted partial summary judgment to the [Appellees] as to the [Ryes'] claims that the Ryes' future children are at risk for complications and [Mrs.] Rye is at risk for harm in the event of future blood transfusions as set forth in the Affidavit and deposition testimony of [Dr.] Bruner [], based upon the court's findings that such risks are too speculative to be submitted to the jury;

2.     Whether the trial [c]ourt properly denied summary judgment to the [Appellees] as to claims that [Mrs.] Rye has "diseased blood" or Rh disease and[,] therefore[,] has an injury in the form an altered bodily status;

3.     Whether the trial [c]ourt properly denied summary judgment to the [Appellees] as to the claim that [Mrs.] Rye has suffered emotional distress, as such claim is not a "stand alone" claim under Tennessee law;

4.     Whether the trial [c]ourt properly granted summary judgment to the [Appellees] as to the claim that [Mr.] Rye has suffered emotional distress, as such claim is a "stand alone" claim under Tennessee law; and,

5.     Whether the fundamental right of procreation in Tennessee articulated in Tennessee case law, *e.g, **Davis v. Davis**, 842 S.W.2d 588, 600–601 (Tenn. 1992),

---

[8](...continued)

(c) **How Sought in Appellate Court; Cost Bond.** The appeal is sought by filing an application for permission to appeal with the clerk of the appellate court within 10 days after the date of entry of the order in the trial court or the making of the prescribed statement by the trial court, whichever is later. A sufficient number of copies shall be filed to provide the clerk and each judge of the appellate court with one copy. The application shall be served on all other parties in the manner provided in rule 20 for the service of papers.

-8-

confers any right of action or remedial damages for disruption of family planning due to impairment of reproductive capacity, and whether the right belongs only to a woman or also to a man.

## Standard of Review

This case was filed in 2009. Accordingly, the trial court's rulings on the Appellees' summary judgment motion are subject to the standard outlined in *Hannan v. Alltel Publ'g Co*., 270 S.W.3d 1(Tenn. 2008).[9]

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells***,** 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co*., 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5(citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial;

---

[9] The Tennessee General Assembly recently passed 2011 Tenn. Pub. Acts 498, "enacting Tennessee Code Annotated section 20-16-101 with the stated purpose 'to overrule the summary judgment standard for parties who do not bear the burden of proof at trial set forth in *Hannan v. Alltel Publ'g Co.*, its progeny, and the cases relied on in *Hannan*.'" *Skyes v. Chattanooga Housing Authority*,343 S.W.3d 18, 25 n.2 (Tenn. 2011). However, the new legislation will only impact causes of action accruing after June 10, 2011. Accordingly, we apply the rule adopted by the Tennessee Supreme Court in *Hannan* to the facts of this case.

or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk Southern Railway. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134 at *3(citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.* "Summary Judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al*, No. E2009-01354-COA-R3-CV, (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995)).

"When considering the evidence, the reviewing court must consider the evidence in a light most favorable to the non-moving party and must resolve all reasonable inferences in the nonmoving party's favor." *King v. Betts*, 354 S.W.3d 691, 712 (Tenn. 2011) (citing *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 845 (Tenn. 2010).

### Mrs. Rye's Injury and Future Medical Damages

We begin first with Mrs. Rye's claim that she has suffered a bodily injury and that she is likely to incur future medical expenses. This case, and specifically these issues, concern a claim for medical malpractice. Medical malpractice claims are governed by the Tennessee Medical Malpractice Act, which in great measure has codified the elements of common law negligence. *See Gunter v. Lab. Corp. of Am.*, 121 S.W.3d 636, 639 (Tenn. 2003); *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn.1993). In order to prevail on a claim of medical malpractice, a plaintiff must establish the following statutory elements: (1) the recognized standard of professional care in the specialty and locality in which the defendant practices; (2) that the defendant failed to act in accordance with the applicable standard of care; and (3) that as a proximate result of the defendant's negligent act or omission, the claimant suffered an injury which otherwise would not have occurred. Tenn. Code Ann. § 29-26-115(a).

With regard to these issues, Mrs. Rye argues that the trial court erred in granting summary judgment to the Appellees on her claims that she is likely to incur future medical

expenses for complications arising from future blood transfusions and future pregnancies, which complications are the proximate and legal result of the Appellees' breach of the standard of care. The Appellees, in contrast, argued in the trial court, and continue to argue in this Court, that Mrs. Rye has suffered no injury in this case that can support a claim for medical malpractice. Further, the Appellees argue that even if Mrs. Rye has suffered an injury, the question of whether Mrs. Rye will incur future medical expenses for future blood transfusions or pregnancy is mere speculation.

On the first point, we must disagree with the Appellees. Instead, we conclude that the trial court did not err in declining to grant summary judgment to the Appellees on the issue of whether Mrs. Rye has suffered a physical injury. In this case, it is undisputed that Mrs. Rye's Rh-sensitization has caused no physical pain or suffering to Mrs. Rye and that Mrs. Rye has received no treatment for her Rh-sensitization. The Appellees assert that Mrs. Rye is, thus, unable to prove that she has suffered any physical injury.  Mrs. Rye disagrees and cites the affidavit of Dr. Bruner.

We first note that the Appellees in this case filed no motion seeking to exclude the affidavit or deposition testimony of Dr. Bruner on the basis that his opinions are based on faulty methodology or that he is unqualified to testify as to the matters at issue in this case. *See McDaniel v. CSX Transportation, Inc.*, 955 S.W.2d 257 (1997) (holding that in determining the reliability of expert testimony, the court may consider  "whether scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether . . . the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation."). In addition, this Court limited review of the issues in this case in its order granting the parties' interlocutory appeal; the issue of the admissibility and reliability of Dr. Bruner's testimony was not certified as an issue in this appeal. Under these circumstances, we will not address any argument that Dr. Bruner's testimony should not be considered by this Court. *See Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000) ("[T]he issues are limited to those specified in this court's order granting the [interlocutory] appeal."); *see also Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn.1991) ("[I]ssues not raised in the trial court cannot be raised for the first time on appeal.").

Turning to Dr. Bruner's affidavit, Dr. Bruner clearly states that a woman who has become Rh-sensitized has an altered body status consistent with an injury. Dr. Bruner referred to this status as "diseased blood."  Dr. Bruner explained that Mrs. Rye's altered body status was the result of antibodies in her blood that were not present prior to her third pregnancy. According to Dr. Bruner, those antibodies subject Mrs. Rye to increased risks in

the future. As he explained in his affidavit:

> 11.    That harm includes injury to [Mrs.] Rye, who has sustained an injury, in my opinion. Biologically, she is not the same person she was before she became Rh-sensitized. When her third pregnancy began, she had normal blood, without the antibodies she now has in her system for life. She now possesses diseased blood with antibodies introduced into her bloodstream through no fault of her own, a situation which would not have occurred had she been given a timely RhoGAM injection.
>
> 12.    Rh disease is well known to hematologists (and well-known to obstetricians and gynecologists as a risk) literally for decades. . . .

Dr. Bruner further described Rh disease as an "auto-immune disorder." Although the Ryes and the Appellees disagree as to the extent and probability of such future risks, the fact that Mrs. Rye's future pregnancies, if any, will be subject to increased risks is not disputed. Both parties also agree that whatever alteration occurred in Mrs. Rye's blood, the alteration is irreversible. Thus, the only disagreement concerns whether this altered body status is properly termed an injury.

The term injury is broadly defined in Black's Law Dictionary as "any wrong or damage done to another." ***Black's Law Dictionary*** 706 (5th ed. 1979). The term bodily injury is somewhat more narrow: "[p]hysical pain, illness, or any impairment of physical condition." ***Id.*** In turn, the term "impair" is defined as "to weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." ***Black's Law Dictionary*** 676 (5th ed. 1979). None of these definitions specifically require that a party receive medical treatment in order to have an injury, nor have the Appellees cited any authority for such assertion.[10]

---

[10] In fact, the Appellees cite no authority to support any of their arguments in this section of their brief. This Court has previously held that "the failure to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) [of the Tennessee Rules of Appellate Procedure] constitutes a waiver of the issue." ***Bean v. Bean***, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000). "[W]hile in this case we chose to proceed with our review despite the fact that the parties chose not to abide by the rules of this Court, we cannot say we will be so accommodating and choose to do the same in the future." ***Wells v. Wells***, No. W2009-01600-COA-R3-CV, 2010 WL 891885, *4 (Tenn. Ct. App. March 15, 2010).

Under these broad definitions, Mrs. Rye's Rh-sensitivity is a cognizable injury sufficient to withstand the Appellees' summary judgment motion. Here, Dr. Bruner has clearly testified that Mrs. Rye has suffered an injury in the form of Rh disease, an altered body status. While the Appellees submitted testimony from their own expert to refute Dr. Bruner's testimony, we must conclude that Dr. Bruner's affidavit creates a material factual dispute as to whether Mrs. Rye has suffered a bodily injury in this case. Under the **Hannan** summary judgment standard, courts are not permitted to grant summary judgment if there are material factual disputes. *See* **Hannan v. Alltel Publ'g Co**., 270 S.W.3d at 5 ("Summary judgment should be granted only when, with the facts viewed in favor of the nonmoving party, it is clear that no genuine issue of material fact exists.").

Dr. Bruner's conclusion is further supported by the testimony of the parties. Here, the parties disagree as to whether Mrs. Rye's Rh-sensitization will ever result in medical complications for her or for her future children, as discussed *infra*. However, even Dr. Long admits that Mrs. Rye's Rh-sensitization creates at least some increased risk for any future children she may have. The Ryes also testified that they have materially altered their behavior and decisions regarding future children due to this perceived risk. Thus, Mrs. Rye's Rh-sensitization has undoubtedly had a negative affect on her life.

This issue was previously considered by the federal district court in **Harms v. Laboratory Corp. of America**, 155 F.Supp.2d 891 (N.D.Ill. 2001). In **Harms**, as in this case, the plaintiff mother developed Rh-sensitization after her blood was misidentified during pregnancy. *Id.* at 897–98. The plaintiff mother filed a complaint for damages based on theories of negligence and *res ipsa loquitor*. The defendant, like the Appellees in this case, filed a motion for summary judgment, arguing that because the condition caused the plaintiff mother no "actual physical pain or suffering," it did not constitute an injury to the plaintiff mother. Instead, the defendant argued that the injury was only to future fetuses or children. *Id.* at 910. The United States District Court rejected this argument, stating:

> [Mother] suffers from Rh sensitization. Whether this condition causes her actual physical pain and suffering, [mother] has been permanently altered by this sensitization. As a direct result of this sensitization, the experts in this case agree that [mother] has a 60 percent chance of suffering from complications with any future pregnancy. Thus, the court disagrees with [the defendant's] characterization that [mother] has not suffered a present physical injury.

*Id.* We agree with the reasoning in **Harms**. Accordingly, regardless of whether any complications resulting from Mrs. Rye's Rh-sensitization actually occur in the future, we

conclude the Appellees have failed to show that Mrs. Rye cannot prove that she has suffered from an injury in this case. Instead, the record contains conflicting proof as to whether Mrs. Rye has suffered an actual injury in this case. When there is conflicting proof in the record on an issue, summary judgment is inappropriate. As recently explained by this Court:

> [S]ummary judgment proceedings have never been envisioned as substitutes for trials of disputed factual issues. [**CAO Holdings, Inc. v. Trost**, 333 S.W.3d 73, 87 (Tenn. 2010)] (citing **Fruge v. Doe**, 952 S.W.2d 408, 410 (Tenn. 1997)). Summary judgment "should not replace a trial when disputed factual issues exist, because *its purpose is not to weigh the evidence*, to resolve factual disputes, or to draw inferences from the facts." **Downs v. Bush**, 263 S.W.3d 812, 815 (Tenn. 2008) (emphasis added). Courts should grant summary judgment "only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." **Carvell v. Bottoms**, 900 S.W.2d 23, 26 (Tenn. 1995).

**Brooks Cotton Co., Inc. v. Williams**, 77 UCC Rep.Serv.2d 493, 381 S.W.3d 414, 428–29 (Tenn. Ct. App. 2012). For the foregoing reasons, we affirm the trial court's denial of the Appellees' Motion for Summary Judgment on this issue.

For the same reasons, we also disagree with the Appellees as to Mrs. Rye's claim for future medical expenses associated with future pregnancies. Accordingly, we reverse the trial court's grant of summary judgment to the Appellees on the issue of future medical expenses for Mrs. Rye's future pregnancies. However, we agree with the Appellees that any future damages from possible blood transfusions required by Mrs. Rye are, at best, contingent and speculative. Therefore, we affirm summary judgment to the Appellees on this issue.

"When faced with a motion for summary judgment challenging the adequacy of its evidence of damages, a plaintiff need only demonstrate that damages exist and that they are not entirely speculative." **Hannan v. Alltel Publ'g Co**., 270 S.W.3d at 21 (citing **Cormier v. Dist. of Columbia Water & Sewer Auth.**, 946 A.2d 340, 348 (D.C. 2008)). According to this Court in **Overstreet v. Shoney's, Inc.**, 4 S.W.3d 694 (Tenn. Ct. App. 1999):

> Damages may never be based on mere conjecture or speculation. *See* **Western Sizzlin, Inc. v. Harris**, 741 S.W.2d 334, 335–36 (Tenn. Ct. App. 1987); **Nashland Assocs. v. Shumate**, 730 S.W.2d 332, 334 (Tenn. Ct. App. 1987). However, uncertain or

-14-

> speculative damages are prohibited only when the existence, not the amount, of damages is uncertain. *See Jennings v. Hayes*, 787 S.W.2d 1, 3 (Tenn. Ct. App. 1989); *Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983). Evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty. *See Airline Constr., Inc. v. Barr*, 807 S.W.2d at 274; *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551, 561 (Tenn. Ct. App. 1985).

*Id.* at 703.

This Court recently discussed the issue of future medical damages in the context of a personal injury case. *See Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280 (Tenn. Ct. App. 2012). In *Singh*, this Court explained:

> To remove awards for future medical expenses from the realm of speculation, persons seeking future medical expenses must present evidence (1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-or-fact to reasonably estimate the cost of the expected treatment.
>
> The first component of a claim for future medical expenses is, in the language of the Tennessee Pattern Jury Instructions, evidence that additional medical treatment is "reasonably certain to be required in the future." This "reasonable certainty" standard requires more than a mere likelihood or possibility. It requires the plaintiff to establish with some degree of certainty that he or she will undergo future medical treatment for the injuries caused by the defendant's negligence. It does not, however, require proof of future medical treatment to an absolute or metaphysical certainty. Rather, the "reasonable certainty" standard requires the plaintiff to prove that he or she will, more probably than not, need these medical services in the future.

*Id.* at 287 (quoting *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *13–14 (Tenn. Ct. App. Jan. 28, 2002)). As further explained by the Tennessee Supreme

Court:

> Tennessee law [] requires that, to recover for future effects of an injury, the future effects must be shown to be reasonably certain and not a mere likelihood or possibility and that, before a plaintiff may recover for potential injuries, there must be a reasonable degree of medical certainty that the plaintiff will develop a disease in the future as a result of an injury.

*Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn.1990) (citing *Maryland Casualty Co. v. Young*, 211 Tenn. 1, 6, 362 S.W.2d 241, 243 (Tenn. 1962); *Williams v. Daniels*, 48 Tenn.App. 112, 121–122, 344 S.W.2d 555, 559 (Tenn. Ct. App. 1960)). Thus, summary judgment under *Hannan* is only appropriate in this type of case when the undisputed facts in the record show that the claimed damages are a "mere likelihood or possibility." *Celotex*, 796 S.W.2d at 681.

We will first consider the evidence in the record regarding Mrs. Rye's claim for future medical expenses related to a future pregnancy. In his affidavit and deposition, Dr. Bruner opines that Mrs. Rye will, more likely than not, become pregnant again. Dr. Bruner testified that he based this opinion on the fact that the Ryes have declined to use birth control and that Mrs. Rye had previously become pregnant three times under such circumstances. Dr. Bruner further testified that should Mrs. Rye become pregnant, the child has a 70% chance of being Rh positive. Dr. Bruner finally opined that such an Rh positive child would, more likely than not, suffer moderate to severe complications due to Mrs. Rye's above-average susceptibility, which complication would require aggressive treatment. These complications can include anemia, fluid retention, enlarged organs, mental retardation, and even death. According to Dr. Bruner, both the complications from the Rh-sensitization, as well as the treatment for such complications, result in increased danger to both Mrs. Rye and her potential unborn child.[11] For example, Dr. Bruner opined that the invasive testing procedures used to determine whether any complications have occurred can themselves sometimes, though rarely, cause premature birth, which can result in cerebral palsy or mental retardation.

In contrast, the Appellees' expert, Dr. Stovall, opined in his affidavit that any future

---

[11] We note that the Appellees argue that Mrs. Rye can prove no damages on this issue because Dr. Bruner testified that, more likely than not, any future child of Mrs. Rye who was Rh positive would receive treatment to ameliorate complications associated with that status. We reject this argument. The Ryes are seeking damages for the future medical expenses, including appropriate treatment of an unborn child, who is put at risk due to Mrs. Rye's Rh-sensitization. The fact that an unborn child will most likely receive treatment does not defeat their claim for future medical expenses; it merely alters the type and extent of damages that could be awarded.

risks to Mrs. Rye as a result of a future pregnancy are "extremely remote" and that "it cannot be said with any reasonable degree of medical certainty that an Rh-sensitized patient will ever sustain any injuries or damages." Dr. Stovall further opined that the risks associated with Rh-sensitization amounted to a mere one-and-one-half (1.5) to two (2) percent.

We, like the trial court, are concerned by the many contingencies that must be met in order for Mrs. Rye to sustain any future medical expenses as a result of her Rh-sensitization, even considering only the testimony of Dr. Bruner. Specifically, Dr. Bruner testified that, first, Mrs. Rye must become pregnant. Although we note that Dr. Bruner testified that such event is more likely than not to occur, we also note that, by their own testimony, the Ryes' have taken steps to prevent the occurrence of a future pregnancy. Indeed, in the six years that this case has been pending, it appears that the Ryes' efforts not to conceive a child have been successful. However, if, despite their best efforts, Mrs. Rye does become pregnant, Dr. Bruner testified that the child will, more likely than not, be Rh positive, leading to complications for the child both in *utero* and once it is born. Thus, two contingencies must be met before there is any risk at all to an unborn child; only if those two contingencies are met is there any risk to either Mrs. Rye or her unborn children. However, Dr. Bruner testified that if these two contingencies are met (i.e., if Mrs. Rye becomes pregnant and if the child is Rh positive), the child will, more likely than not, suffer moderate to severe complications, due to Mrs. Rye's above average susceptibility to the antibodies in her blood. Dr. Bruner also testified that in this event, Mrs. Rye is also likely to suffer complications. Dr. Bruner testified that such complications include high blood pressure, fluid retention, and proteinuria, which is "something very closely akin to preeclampsia."[12]

Under these circumstances, we are reluctant to conclude that the proof submitted by Mrs. Rye regarding these damages is anything more than contingent and speculative. Other courts have refused to allow plaintiffs to submit proof of future damages to unborn children in similar situations. *See Harms v. Laboratory Corp. of America*, 155 F.Supp.2d 891, 912 (N.D.Ill. 2001) (granting summary judgment as to the plaintiffs' claim for "damages for risk of future harm to a fetus" due to Rh-sensitization because "it is impossible to determine without speculation what sort of injury—if any—the fetus would suffer"). However, we recognize that it is not the province of this Court to weigh the evidence at this stage of the proceedings. As we have previously stated, to obtain summary judgment, the Appellees must have either: (1) affirmatively negated an essential element of the non-moving party's claim; or (2) shown that the non-moving party will not be able to prove an essential element at trial.

---

[12] "Preeclampsia" is defined as "an abnormal condition of pregnancy characterized by the onset of acute hypertension after the twenty-fourth week of pregnancy." *Mosby's Medical, Nursing, and Allied Health Dictionary* 1308 (5th ed. 1998). Other definitions of preeclampsia include "hypertension, edema, and/or proteinuria." *Id.* at 1346.

*Hannan*, 270 S.W.3d at 8–9. As evidenced by the Appellees' repeated assertions in their brief that "the record is devoid of proof" as to Mrs. Rye's claim for future medical expenses, the Appellees assert that they have shown that Mrs. Rye will be unable to prove the existence of these damages at trial. The *Hannan* decision, however, created a particularly high standard for defendants when attempting to gain summary judgment under this prong. According to the Tennessee Supreme Court in *Hannan*, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 9. Indeed, this Court has described the *Hannan* standard as a "substantially more rigorous standard," than prior summary judgment standards in Tennessee and elsewhere. *White v. Target Corp.*, 2012 WL 6599814, at *7 (Tenn. Ct. App. Dec. 18, 2012); *see Harms*, 155 F.Supp.2d at 912 (applying the less stringent federal summary judgment standard to conclude that the damages sought were speculative). This Court has explained the burden placed on defendants under this standard:

> Under *Hannan*, to obtain summary judgment in its favor, [the defendant] must negate an element of [the plaintiff's] claim or show that [the plaintiff] cannot establish the elements of her claim. It is not enough to say . . . that [the plaintiff] has not yet proffered evidence to substantiate her assertion[s] . . . . Under that circumstance, [the defendant] has not "disprove[d] an essential factual claim" made by [the plaintiff], and therefore has not shifted the burden to [the plaintiff].

*White*, 2012 WL 6599814, at *7 (footnote omitted). The *White* Court further stated:

> Under *Hannan*, as we perceive the ruling in that case, it is not enough to rely on the nonmoving party's lack of proof even where, as here, the trial court entered a scheduling order and ruled on the summary judgment motion after the deadline for discovery had passed. Under *Hannan*, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support her claim.

*White*, 2012 WL 6599814, at *7, n.3.

In this case, we must conclude that the Appellees have not "disprove[d] an essential factual claim" made by Mrs. Rye. Instead, there is conflicting evidence in the record as to the likelihood that Mrs. Rye will sustain future medical expenses related to a future pregnancy. While we agree that the evidence in the record casts doubt on Mrs. Rye's ability to prove the existence and likelihood of damages in the form of future medical expenses related to a

potential future pregnancy at trial, this is simply insufficient to justify a grant of summary judgment.

The Appellees assert, however, that summary judgment is appropriate and cite *Sterling v. Velsicol Chem Corp.*, 855 F.2d 1188 (6th Cir. 1988) to support their argument. In *Sterling*, the plaintiffs sought damages related to exposure to a corporation's chemical waste burial site. After a bench trial, the district court found in favor of the plaintiffs on a number of claims, including the plaintiffs' claims for future medical expenses related to their increased susceptibility to cancer due to the exposure. *Id.* at 1194. Applying Tennessee law regarding speculative damages, the United States Court of Appeals for the Sixth Circuit reversed the award of future medical expenses, concluding that the damages were speculative. According to the Court:

> In the instant case, the district court found an increased risk for susceptibility to cancer and other diseases of only twenty-five to thirty percent. This does not constitute a reasonable medical certainty, but rather a mere possibility or speculation. Indeed, no expert witnesses ever testified during the course of trial that the five representative plaintiffs had even a probability—i.e., more than a fifty percent chance—of developing cancer and kidney or liver disease as a result of their exposure to defendant's chemicals.

*Id.* at 1205.

*Sterling* is not analogous to the present situation for several reasons. First, the Sixth Circuit's decision in *Sterling* occurred after a bench trial. *Id.* at 1194. Thus, it did not implicate the federal summary judgment standard, much less the high summary judgment standard applicable in this case. Second, the issue in *Sterling* involved a discreet tort that has been subject to voluminous litigation—potential risk of susceptibility to future disease. The issue in *Sterling* was whether the exposure to the allegedly dangerous chemicals would cause a disease, such as cancer, in the future, which disease would then subject the plaintiffs to future medical expenses. Increased susceptibility to a future disease is not at issue in this case; instead, we are simply dealing with a case where it is disputed as to whether, and to what extent, Mrs. Rye's current physical condition will cause injuries to herself and her future children. Further, the proof submitted in *Sterling* simply does not rise to the level of proof offered by Mrs. Rye in this case. As noted by the Sixth Circuit, the *Sterling* "plaintiffs' experts could not formulate a quantitative measure to a reasonable medical certainty of excess kidney, liver, and cancer risk, it was left to speculation as to possible consequences of the ingestion of the alleged carcinogens on the future health of each plaintiff." *Id.* at 1205.

Indeed, based on the evidence, the district court concluded that there was only a twenty-five to thirty percent chance of the plaintiffs developing cancer or other diseases from their exposure to the chemicals. *Id.* In contrast, in this case, Dr. Bruner testified that Mrs. Rye is likely to become pregnant, likely to conceive a child that is Rh positive, and likely to suffer from moderate to severe complications during the pregnancy. Dr. Bruner testified that all of these contingencies were more likely than not to occur. Although Dr. Stovall's testimony disputes Dr. Bruner's opinions, we must conclude that Dr. Bruner's testimony creates a material factual dispute. Thus, summary judgment on this issue was not appropriate.[13]

With regard to Mrs. Rye's claim for future medical expenses related to blood transfusions, however, we agree with the trial court and affirm summary judgment in favor of the Appellees. In this case, Dr. Bruner testified that "if Mrs. Rye is involved in a medical emergency henceforth in which she will require a blood transfusion, she is an increased risk of life-threatening problems." From our review of Dr. Bruner's affidavit and deposition testimony, however, nothing indicates that Dr. Bruner believes, based on his medical knowledge and expertise, that Mrs. Rye is more likely than not to be involved in a medical emergency requiring a blood transfusion. Although Dr. Bruner testified that a blood transfusion may be required during pregnancy, which he had previously opined was more likely than not to occur, nowhere in Dr. Bruner's affidavit or deposition testimony does he state, with a reasonable degree of medical certainty, that Mrs. Rye is likely to require a blood transfusion due to a future pregnancy. Under these circumstances, we must conclude that the undisputed evidence in the record establishes that the likelihood of Mrs. Rye requiring a blood transfusion in the future is no more than a mere possibility. Without some testimony regarding Mrs. Rye's future need for a blood transfusion "in terms of a 'probability, a 'better than even chance', [or] 'more likely than not,'" Dr. Bruner's testimony does not "take[] the proof out of the realm of speculation and into the realm that satisfies the traditional preponderance of

---

[13] As an alternative argument, the Appellees assert that Mrs. Rye cannot assert a claim for future medical expenses associated with a future pregnancy and accompanying complications because the Ryes "cannot bring a cause of action on behalf of a fetus that does not exist." The Appellees cite Tennessee's wrongful death statute, which requires proof that a fetus was viable to recover for the wrongful death of the fetus. *See* Tenn. Code Ann. §20-5-106. We respectfully reject this argument. First, we note that this argument was not raised in the Appellees' Motion to Dismiss, or in the alternative, for Summary Judgment, accompanying Memorandum, or Supplemental Memorandum. Instead, it appears that this argument was raised for the first time on appeal. It well-settled that a party may not raise an issue for the first time on appeal. *See* **Heatherly v. Merrimack Mut. Fire Ins. Co.**, 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000) ("As a general matter, appellate courts will decline to consider issues raised for the first time on appeal that were not raised and considered in the trial court."). Even assuming this argument was properly raised, we respectfully disagree with the Appellees' assertion. As we perceive it, the Ryes have not brought a cause of action "on behalf of" any future child they may conceive, but rather for medical expenses Mrs. Rye is likely to incur as a result of complications with a future pregnancy. The cause of action, therefore, belongs to Mrs. Rye, rather than a future unborn child.

the evidence standard." *Jacobs v. Nashville Ear, Nose & Throat Clinic*, 338 S.W.3d 466, 483 (Tenn. Ct. App. 2010) (citing *Kilpatrick*, 868 S.W.2d at 599–603)). As explained by the Tennessee Supreme Court:

> A doctor's testimony that a certain thing is possible is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible. Almost anything is possible . . . ."

*Lindsey v. Miami Development Corp.*, 689 S.W.2d 856 (Tenn. 1985) (citing *Palace Bar, Inc. v. Fearnot*, 269 Ind. 405, 381 N.E.2d 858, 864 (Ind. 1978)). Accordingly, summary judgment in favor of the Appellees on the issue of future medical expenses related to future blood transfusions is affirmed.

### Disruption of Family Planning

The Ryes next argue that the trial court erred in granting summary judgment on their claim that each of them has a cognizable claim for disruption of family planning pursuant to the Tennessee Supreme Court's decision in *Davis v. Davis*, 842 S.W.2d 588, 600–601 (Tenn. 1992). In the alternative, the Ryes argue that if there is no independent right of action for disruption of family planning, this disruption should be considered "an aspect, component, or manifestation of the harm to Mrs. Rye, which to the extent it impairs reproduction has consequences for both husband *and* wife by definition." The Appellees argue, in contrast, that disruption of family planning is not cognizable as an independent cause of action, nor is it an appropriate type of damages for either Mrs. Rye or Mr. Rye.

In *Davis*, a divorced husband and wife disputed what could be done to the cryogenically preserved product of their in vitro fertilization efforts, referred to in the Opinion as "frozen embryos." Wife originally desired that she should have custody of the frozen embryos, allowing her to become pregnant once the divorce was final. Husband objected, preferring to wait to determine whether he wanted a child after the divorce. The trial court determined that the frozen embryos were "human beings" and awarded custody to the Wife. The Court of Appeals reversed, finding that husband had a "constitutionally protected right not to beget a child where no pregnancy has taken place" and holding that "there is no compelling state interest to justify [ ] ordering implantation against the will of either party." The Court of Appeals further held that "the parties share an interest in the seven fertilized ova" and remanded the case to the trial court for entry of an order vesting them with "joint control . . . and equal voice over their disposition." *Id.* at 589.

The Tennessee Supreme Court granted review, ostensibly to "give adequate guidance

-21-

to the trial court in the event the parties cannot agree." *Id.* at 590. During the pendency of the proceedings, however, the parties' desires shifted: Wife wanted to donate the frozen embryos to a childless couple; Husband wanted to dispose of the frozen embryos. The Tennessee Supreme Court ultimately concluded that the trial court should apply a balancing test based on the interests of each potential parent in the frozen embryos. *Id.* The Court advised that: "if the party seeking control of the preembryos intends merely to donate them to another couple, the objecting party obviously has the greater interest and should prevail." *Id.* at 604.

In reaching its ultimate decision in the case, the Tennessee Supreme Court relied on the fundamental right of privacy regarding child-bearing, as examined by the United States Supreme Court:

> If the right of privacy means anything, it is the right of the **individual**, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.

*Id.* at 600 (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972) (emphasis in original)). The Court further explained:

> That a right to procreational autonomy is inherent in our most basic concepts of liberty is also indicated by the reproductive freedom cases, see, e.g., *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and by cases concerning parental rights and responsibilities with respect to children. *See, e.g., Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); and *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). In fact, in *Bellotti v. Baird*, the Supreme Court noted that parental autonomy is basic to the structure of our

society because the family is "the institution by which we inculcate and pass down many of our most cherished values, morals and cultural." *Bellotti*, 443 U.S. at 634, 99 S.Ct. at 3043.

*Davis*, 842 S.W.2d at 601.

We do not disagree with the Ryes that the *Davis* case implicates the right to largely uninhibited family planning in the circumstances at issue in that case. However, we do not agree that the decision in *Davis* creates an independent right of action against a private individual or company for disruption of this right, as the Ryes suggest. Indeed, the *Davis* Opinion specifically states that both the Tennessee and United States Constitutions "protect individuals from unwarranted **governmental** intrusion into matters such as the one now before us, involving intimate questions of personal and family concern." *Id.* at 600 (emphasis added). Further, the holding in *Davis*, as cited by the Ryes in their brief, reiterates the requirement that the intrusion be governmental in nature: "it is the right of the individual . . . to be free from unwarranted **governmental** intrusion into . . . the decision whether to bear or beget a child." *Id.* (emphasis added). There are no allegations in this case that either of the Appellees are government actors or that this case involves any kind of "governmental intrusion." Accordingly, the *Davis* Opinion is simply not applicable to the facts at issue in this case. Under these circumstances, we decline to conclude that the holding in *Davis* should be extended to confer an independent right of action on the part of either Mrs. Rye or Mr. Rye against a non-governmental third-party. *See Cagle v. Cass*, No. W2001-00760-COA-R3-CV, 2001 WL 792644, at *3 (Tenn. Ct. App. 2001 ) (holding that one who "is not an employee of the state or federal government, nor can he be said to be a state actor, and therefore is incapable of violating the adverse parties constitutional rights") (citing *Bryant v. Tenent, Inc.*, 969 S.W.2d 923, 925 (Tenn. Ct. App. 1997) (citing *State v. Hale*, 840 S.W.2d 307, 312 (Tenn. 1992))).

The Ryes fail to cite any cases in which disruption of family was held to constitute an independent cause of action for either a potential mother or father. The only case cited by the Ryes on this issue, other than *Davis*, is *Moss v. Pacquing*, 455 N.W.2d 339 (Mich. App. Ct. 1990). In *Moss*, the plaintiff filed an action for medical malpractice after a defendant doctor's alleged malpractice caused her to become sterile. The plaintiff's husband also filed a loss of consortium claim. The trial court granted summary judgment in favor of the defendant as to both claims on the basis of the expiration of the statute of limitations. The Michigan Court of Appeals reversed, holding that there was a factual dispute as to when the plaintiff discovered her injury for purposes of the discovery rule. The *Moss* case, therefore, is not relevant to the case-at-bar. First, nothing in the Opinion discusses an independent right of action for loss of family planning; the *Moss* case involved a typical claim for medical malpractice. Further, the issue of whether either the plaintiff's or her husband's claims had merit was never entertained by the Court; the only issue addressed was the tolling of the statute of limitations.

The Ryes seem to suggest, however, that this case illustrates that a husband has his own claim for loss of the ability to have children without undue risk. We disagree. In *Moss*, the husband filed a claim for loss of consortium, rather than for disruption of family planning. This is a recognized claim in both Michigan and Tennessee. *See Furby v. Raymark*

-23-

***Industries, Inc.***, 154 Mich.App. 339, 343, 397 N.W.2d 303 (Mich. Ct. App. 1986) (recognizing a claim for loss of consortium under Michigan law). For example, in ***Jordan v. Baptist Three Rivers Hosp.***, 984 S.W.2d 593, 602 (Tenn.1999), this Court explained Tennessee's loss of consortium claim:

> Loss of consortium consists of several elements, encompassing not only tangible services provided by a family member, but also intangible benefits each family member receives from the continued existence of other family members. Such benefits include attention, guidance, care, protection, training, companionship, cooperation, affection, love, and in the case of a spouse, sexual relations.

***Id.*** at 602. In contrast, Mr. Rye did not assert any cause of action for loss of consortium, nor do any of Mr. Rye's assertions regarding the disruption of family planning fall within the typical elements of a loss of consortium claim described above. Thus, the ***Moss*** case is inapposite to the facts presented in this case. Based on the foregoing, we must conclude that Tennessee law currently provides for no independent cause of action for disruption of family planning. Further, we have been provided no law suggesting that any other jurisdiction has recognized disruption of family planning as an independent cause of action. Without any other law to support their arguments, we decline to extend Tennessee law to create such a cause of action. The purview of this Court is not to create new causes of action. We, therefore, affirm the trial court's grant of summary judgment to the Appellees on the basis of its conclusion that there is no independent cause of action for disruption of family planning in Tennessee.

After granting summary judgment to the Appellees on the issue of an independent cause of action, the trial court further ruled that Mrs. Rye would be allowed to present evidence regarding the disruption of family planning as a measure of damages in her negligent infliction of emotional distress claim. Both parties take issue with this ruling. The Ryes argue that both Mrs. Rye and Mr. Rye should be allowed to present evidence of disruption of family planning as a measure of damages in their emotional distress claims. In contrast, the Appellees argue that neither party should be allowed to submit evidence on this issue. We agree with the Ryes that evidence of disruption of family planning is relevant evidence regarding the damages sustained by either Mrs. Rye or Mr. Rye, in their respective claims for negligent infliction of emotional distress, if any.

The facts are undisputed in this case that the Ryes were informed that Mrs. Rye's Rh-sensitization could create risks to future children born to Mrs. Rye. Although it is disputed as to how likely the risks are, the risks could include anemia, brain damage, or death. It is further

-24-

undisputed that due to these risks, the Ryes chose to modify their behavior in an attempt to prevent future conceptions. Even Dr. Long admitted in her deposition that the Ryes' choice to attempt to prevent future pregnancies was reasonable, given the risks. The Appellees cite no law for their argument that this type of disruption is not properly considered as a form of damages relevant to a claim for negligent infliction of emotional distress, nor has our research revealed any. Accordingly, we conclude that, to the extent that either Mrs. Rye or Mr. Rye have a cognizable claim for negligent infliction of emotional distress, that party may present evidence of the disruption of family planning as evidence of the damages sustained as a result of that tort.

### Negligent Infliction of Emotional Distress Claims

The final issues in this case concerns the trial court's rulings with regard to both Mrs. and Mr. Rye's claims for emotional distress. With regard to Mrs. Rye, the trial court declined to grant summary judgment as to her claim for emotional distress, concluding that the Appellees failed to show that Mrs. Rye had not suffered an accompanying physical injury. Thus, the trial court concluded that Mrs. Rye's claim did not fail for lack of supporting expert proof. The Appellees contend that this was error. In contrast, the Ryes contend that the trial court erred in granting summary judgment to the Appellees on Mr. Rye's claim for emotional distress. The trial court concluded that Mr. Rye had suffered no physical injury; therefore, based on the holding in *Estate of Amos v. Vanderbilt University*, 62 S.W.3d 133 (Tenn. 2001), the trial court concluded that Mr. Rye's emotional distress claim was a "stand alone" claim that must be supported by expert proof. Finding no expert proof on this issue in the record, the trial court dismissed Mr. Rye's claim. We conclude that the trial court should not have granted summary judgment to the Appellees with regard to either claim.

It is undisputed that the Ryes' claims for emotional distress involve negligent infliction of emotional distress, rather than intentional infliction. In 1996 the Tennessee Supreme Court addressed the appropriate proof required for a negligent infliction of emotional distress claim. In *Camper v. Minor*, 915 S.W.2d 437 (Tenn.1996), the plaintiff filed suit for negligent infliction of emotional distress. It was undisputed in *Camper* that the plaintiff suffered no physical injuries other than a scraped knee, for which the plaintiff required no treatment of any kind. *Id.* at 439. Under the law at the time, however, to recover for negligent infliction of emotional distress, a plaintiff was required to show that he or she had sustained a physical injury. As explained by the Court:

> The physical injury requirement served to objectify the inquiry; it assured that the plaintiff's allegations of emotional injury were grounded in an independently verifiable event. Although the degree of physical injury required to substantiate the plaintiff's

emotional damages claim was not always consistent, and was sometimes quite negligible, the requirement nevertheless remained central to this area of negligence law.

*Id.* at 445 (quoting ***Carroll v. Sisters of St. Francis Health Services***, Inc., 868 S.W.2d 585 (Tenn.1993)). The Court noted, however, that the so-called "physical manifestation rule" "proved to be inflexible and inadequate in practice," as it "completely ignore[d] the fact that some valid emotional injuries simply may not be accompanied by a contemporaneous physical injury or have physical consequences." ***Camper***, 915 S.W.2d at 446. Accordingly, the ***Camper*** Court concluded that "the time ha[d] come to abandon the rigid and overly formulaic 'physical manifestation' or 'injury' rule," and the Court held that physical injury would "no longer be used to test the validity of a *prima facie* case of negligent infliction of emotional distress." *Id.* Instead, the Court decided that claims for negligent infliction of emotional distress should be analyzed under a "general negligence" approach, requiring each of the five elements of general negligence: duty, breach of duty, injury or loss, causation in fact, and proximate, or legal, cause. *Id.* The Court also noted that "in order to guard against trivial or fraudulent actions, the law ought to provide a recovery only for 'serious' or 'severe' emotional injury," meaning that "a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* Finally, the Court held, "the claimed injury or impairment must be supported by expert medical or scientific proof." *Id.* Thus, a physical injury was not required to prove negligent infliction of emotional distress, so long as the claim was supported by expert proof.

The question remained, however, as to whether expert proof was required in cases in which the plaintiff could show either a physical or other tortious injury. The issue was settled in ***Estate of Amos v. Vanderbilt University***, 62 S.W.3d 133 (Tenn. 2001). Specifically, the Court was asked to decide "whether the special proof requirements of ***Camper v. Minor***, 915 S.W.2d 437, 446 (Tenn. 1996), extend to all negligence claims in which damages for emotional distress are sought as an item of compensatory damages." The Court held that the special proof requirements did not apply to all claims of negligent infliction of emotional distress. ***Estate of Amos***, 62 S.W.3d at 136–37.

In ***Estate of Amos***, the plaintiff wife was exposed to human immunodeficiency virus (HIV) during a routine surgery due to the alleged negligence of the defendant medical providers. *Id.* at 135. As a result of her infection, the plaintiffs' unborn child contracted HIV *in utero*. *Id.* The plaintiffs later learned that they had both contracted HIV. The plaintiffs filed suit, seeking compensation for medical malpractice, failure to warn, and negligent infliction

-26-

of emotional distress.[14] The trial court awarded damages to the plaintiffs for negligent infliction of emotional distress. The Court of Appeals reversed the award, concluding that because the plaintiffs had submitted no expert proof to support their claim, the rule in *Camper* disallowed the claim. The plaintiffs appealed to the Tennessee Supreme Court.

The Tennessee Supreme Court disagreed with the Court of Appeals' interpretation of *Camper,* explaining:

> [The defendant] contends that *Camper's* requirements of expert medical or scientific proof and serious or severe injury extend to all negligence claims resulting in emotional injury. We disagree. The special proof requirements in *Camper* are a unique safeguard to ensure the reliability of "stand-alone" negligent infliction of emotional distress claims. *Camper*, 915 S.W.2d at 440; *see also Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). The subjective nature of "stand-alone" emotional injuries creates a risk for fraudulent claims. *Miller*, 8 S.W.3d at 614 ("legitimate concerns of fraudulent and trivial claims are implicated when a plaintiff brings an action for a purely mental injury"); *see Camper*, 915 S.W.2d at 440. The risk of a fraudulent claim is less, however, in a case in which a claim for emotional injury damages is one of multiple claims for damages. When emotional damages are a "parasitic" consequence of negligent conduct that results in multiple types of damages, there is no need to impose special pleading or proof requirements that apply to "stand-alone" emotional distress claims. *See Kush v. Lloyd*, 616 So.2d 415, 422–23 (Fla. 1992); *see also Naccash v. Burger*, 223 Va. 406, 290 S.E.2d 825, 831 (1982); *Phillips v. United States*, 575 F.Supp. 1309, 1318–19 (D.S.C. 1983).
>
> Even before *Camper*, a plaintiff could recover for emotional injuries as one of several items of compensatory damages. *See, e.g., Smith v. Gore*, 728 S.W.2d 738, 751–52 (Tenn. 1987) (in an action for wrongful pregnancy, plaintiffs could recover damages for medical expenses, pain and suffering, loss of wages, and emotional distress or mental anguish); *Laxton v. Orkin Exterminating Co., Inc.*, 639 S.W.2d 431, 431, 434 (Tenn. 1982) (damages allowed for mental anguish, personal

---

[14] The plaintiffs' child died a few months after birth. Wife died during the pendency of the proceedings.

> injury, and property damages resulting from the negligent contamination of plaintiffs' water supply); ***Roberson v. Univ. of Tenn.***, 829 S.W.2d 149, 152 (Tenn. Ct. App. 1992) (damages for gender discrimination included actual damages, damages for emotional distress, attorneys' fees, costs, and punitive damages). Before ***Camper***, however, Tennessee courts did not allow recovery for mental injuries "without accompanying physical injury or physical consequences, or without other independent basis for tort liability." ***Laxton***, 639 S.W.2d at 433. The ***Camper*** holding contemplated a plaintiff who was involved in an incident and received only emotional injuries. With its abandonment of the "physical manifestation" rule, the ***Camper*** Court opened the door for legitimate "stand-alone" claims of negligent infliction of emotional distress. *See* Laura J. Bradley, Case Note, *Bain v. Wells*, 936 S.W.2d 618 (Tenn.1997), 65 Tenn. L.Rev. 293, 305. The ***Camper*** holding did not alter the longstanding rule that emotional injuries are compensable if accompanied by additional claims for damages. Imposing the more stringent ***Camper*** proof requirements upon all negligence claims resulting in emotional injury would severely limit the number of otherwise compensable claims. Such a result would be contrary to the intent of our opinion in ***Camper***—to provide a more adequate, flexible rule allowing compensation for valid "stand-alone" emotional injury claims. ***Camper***, 915 S.W.2d at 446.

***Estate of Amos***, 62 S.W.3d at 136–37.

The Court concluded that the wife had a cognizable claim for breach of the duty to warn. In addition, the Court held that husband's injuries were a reasonably foreseeable result of the defendant's breach. Thus, both husband and wife had independent claims for damages beyond their emotional distress claims. Therefore, the Court concluded that neither husband's nor wife's negligent infliction of emotional distress claims were "stand alone" claims requiring expert proof. The Court, consequently, reinstated the trial court's award of compensatory damages to the plaintiffs.

More recently, in ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196 (Tenn.2012), the Tennessee Supreme Court reaffirmed the rules expressed in ***Camper*** and ***Estate of Amos***. The ***Rogers*** Court outlined the elements of the tort of negligent infliction of emotional distress and compared it to intentional infliction of emotional distress:

The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation. In addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury. Thus, both actions for intentional infliction of emotional distress and negligent infliction of emotional distress . . . require an identical element: a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct.

*Rogers*, 367 S.W.3d at 206 (internal citations and footnotes omitted). As explained by the Court:

The reason for the rule imposing liability only when extreme and outrageous conduct causes serious or severe emotional distress is apparent—to avoid the judicial system being flooded with potentially fraudulent, manufactured or overstated claims arising from the "transient and trivial" emotional distresses of daily life, recognizing that "[i]f the plaintiff is to recover every time that [his or] her feelings are hurt, we should all be in court twice a week."

*Id.* at 209 (quoting Russell Fraker, Note, *Reformulating Outrage: A Critical Analysis of the Problematic Tort of IIED*, 61 Vand.L.Rev. 983, 988 (2008)). Further, the Court reaffirmed that the expert proof requirement applies only to a "stand alone" claim for negligent infliction of emotional distress. The Court distinguished between a "stand alone" emotional distress claim and one in which the plaintiff's emotional distress is "a 'parasitic' consequence of negligent conduct that results in multiple types of damages." *Rogers*, 367 S.W.3d at 206 n. 10. The *Rogers* Court explained:

When the claim for negligent infliction of emotional distress is a "stand-alone" claim, i.e., one for emotional disturbance alone in the absence of a physical injury, the serious or severe mental injury must be proven "through expert medical or scientific proof." *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 528 (Tenn. 2008). When the cause of action for negligent infliction is for "emotional damages [that] are a 'parasitic' consequence of negligent conduct that results in multiple types of damages," there is no requirement that the serious or severe mental injury be proven by expert proof. *Estate of Amos v. Vanderbilt Univ.*, 62

S.W.3d 133, 137 (Tenn.2001).

*Rogers*, 367 S.W.3d at 206 n.10. Thus, a plaintiff may recover for negligent infliction of emotional distress without the need for expert proof when the claim is accompanied by "physical injury or physical consequences," or another "independent basis for tort liability." *Estate of Amos*, 62 S.W.3d at 37 (citing *Laxton*, 639 S.W.2d at 433).

Turning to the claims of the Ryes, it is clear that Mrs. Rye's claim for emotional distress is not a "stand alone" claim. This Court, like the trial court, has declined to grant summary judgment to the Appellees as to whether Mrs. Rye has a physical injury due to her Rh-sensitization. Thus, the Appellees have not met their burden to show that Mrs. Rye cannot prove, at trial, that her emotional distress claim is not accompanied by "physical injury or physical consequences." *Estate of Amos*, 62 S.W.3d at 37 (citing *Laxton*, 639 S.W.2d at 433). It is apparent from the record that any anxiety or distress that Mrs. Rye has allegedly suffered is causally related to the Appellees' alleged negligence and her resulting Rh-sensitization. Thus, Mrs. Rye's emotional distress claim is clearly "parasitic" to her claim for medical malpractice. *See Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 530 (Tenn. 2008) (holding that a plaintiff need not meet the special proof requirements when emotional distress results from his or her own injuries); *see also Harms*, 155 F.Supp.2d at 910 (declining to grant summary judgment on plaintiff's emotional distress claim, based on the conclusion that "[a]ny concerns about a pregnancy or complications that arise during that pregnancy clearly affect the woman who carries the fetus"). In addition, we have also declined to grant summary judgment to the Appellees as to Mrs. Rye's claim for future medical expenses related to a potential future pregnancy. Accordingly, Mrs. Rye's claim for future medical expenses related to the Appellees alleged medical malpractice serves as an "independent basis for tort liability." *Estate of Amos*, 62 S.W.3d at 37 (citing *Laxton*, 639 S.W.2d at 433). Thus, the trial court did not err in declining to grant summary judgment to the Appellees on Mrs. Rye's claim for negligent infliction of emotional distress.

We next consider Mr. Rye's claim for emotional distress. It is undisputed in this case that Mr. Rye has not suffered from any physical injury. The Ryes contend, however, that Mr. Rye has an actual injury because his right to family planning has been disrupted. We have previously determined that Tennessee law does not recognize an independent cause of action for disruption of family planning, but that such disruption may be considered as an element of damages with regard to other independent bases of liability. We did not hold, however, that this disruption served as an independent basis of liability; rather, our holding merely allows Mr. Rye to submit evidence of this disruption as a type of damages for any actual causes of

action he might have. Mr. Rye has asserted no other claims in this case.[15] Thus, we conclude that Mr. Rye has suffered no physical injury or consequences and asserted no "independent basis for tort liability" from which the Court could conclude that his claim is not a "stand alone" claim pursuant to *Estate of Amos*. *Estate of Amos*, 62 S.W.3d at 37 (citing *Laxton*, 639 S.W.2d at 433).

Mr. Rye argues, however, that this Court can find that Mr. Rye has a proper claim for emotional distress because other cases have allowed recovery under similar situations prior to the adoption of the "stand alone" rule expressed in *Estate of Amos*. For example, Mr. Rye cites the Virginia Supreme Court's opinion in *Naccash v. Burger*, 223 Va. 406, 290 S.E.2d 825, 831 (1982). In Virginia at the time, the general rule did not allow recovery for emotional distress "unless the [distress] result[ed] directly from tortiously caused physical injury." The plaintiffs in *Naccash*, however, asserted that their emotional distress stemmed not from a physical injury to themselves, but from the birth, suffering and eventual death of their child, who was born with Tay-Sachs disease.[16] The Court held that under these limited circumstances, an exception was warranted:

> The restrictions upon recovery imposed by the provisos in
> [our prior cases] were designed to discourage spurious claims

---

[15] Mr. Rye does not argue in his brief to this Court that the claim for future medical expenses relative to any of Mrs. Rye's potential future pregnancies provides a basis for a conclusion that Mr. Rye's emotional distress claim is not a "stand alone" claim pursuant to *Estate of Amos*. Indeed, nothing in the Ryes' brief leads this Court to conclude that Mr. Rye is arguing that Mrs. Rye's claim for future medical expenses serves as an "independent basis for tort liability" belonging to Mr. Rye for purposes of the "stand alone" rule. *See Flax*, 272 S.W.3d at 529–30 (holding that to support a finding that an emotional distress claim is "parasitic" consequence of other claims for negligence, the "parasitic claims" must be "personal to the plaintiff").

[16] Tay-Sachs disease is:

> an invariably fatal disease of the brain and spinal cord that occurs in Jewish
> infants of eastern European*410 ancestry. A diseased child appears normal
> at birth, but, at four to six months, its central nervous system begins to
> degenerate, and it suffers eventual blindness, deafness, paralysis, seizures,
> and mental retardation. The life expectancy of an afflicted child is two to
> four years.

*Naccash*, 290 S.E.2d at 827. The *Naccash* plaintiffs underwent genetic testing while pregnant with their first child. The test showed that Father was not a carrier for Tay-Sachs disease; because the gene for Tay-Sachs is recessive, the plaintiffs were informed that there was no need to test Mother. "Satisfied with the report, [Mother] 'went ahead and had' her baby." *Id.* However, soon after her birth, the plaintiffs' child began showing abnormalities associated with Tay-Sachs disease. Further tests showed that Father was indeed a carrier of the Tay-Sachs gene. The plaintiffs' daughter ultimately died from the disease. *Id.*

-31-

asserted by chance witnesses to physical torts involving others. The considerations prompting imposition of the limitations do not exist here; no one suggests that the [plaintiff parents'] emotional distress was feigned or that their claim was fraudulent. Indeed, to apply the restrictions here, or to refuse to recognize an exception to the general rule, "would constitute a perversion of fundamental principles of justice."

Furthermore, we believe it would be wholly unrealistic to say that the [plaintiffs] were mere witnesses to the consequences of the tortious conduct involved in this case. In our view, the parents' emotional distress was no less a direct result of wrongful conduct than the distress endured by the plaintiffs in[ our previous decisions]; the evidence shows an unbroken chain of causal connection directly linking the erroneous Tay-Sachs report, the deprivation of the parents' opportunity to accept or reject the continuance of [Mother's] pregnancy, and the emotional distress the parents suffered following the birth of their fatally defective child.

*Naccash*, 290 S.E.2d at 831.

The *Naccash* case is inapposite to the case at bar. First, Tennessee, unlike Virginia in 1982, has long departed from a rule requiring a physical injury in all negligent infliction of emotional distress cases. Instead, the Tennessee Supreme Court has outlined a far less stringent standard. First, a plaintiff may recover, without the need for expert proof, when the plaintiff has suffered not only a physical injury, but also an "independent basis for tort liability." *Estate of Amos*, 62 S.W.3d at 37 (citing *Laxton*, 639 S.W.2d at 433). The *Naccash* plaintiffs would have undoubtedly met this standard as the Virginia Supreme Court essentially likened their claim for medical expenses associated with caring for their daughter to a medical malpractice action. *Naccash*, 290 S.E.2d at 829 ("Whether a cause of action exists for the wrongs complained of and the damages sought here is a question that should be determined, in our opinion, according to traditional tort principles. Only a novel twist in the medical setting differentiates the present situation from the ***ordinary malpractice action***.") (emphasis added); *see also* Tenn. Code Ann. § 20-1-105 (stating that the parents of a minor child who sustains an injury have the right to maintain an action for the expenses related to that injury). Further, Tennessee jurisprudence does not completely disallow recovery for emotional distress when the plaintiff cannot show a physical injury or other tort was committed against him or her. Instead, the plaintiff in that situation must simply present some expert proof to support his or claim. *Estate of Amos*, 62 S.W.3d at 37. We do not consider this to be an insurmountable standard. Accordingly, cases decided in other jurisdictions under rules that

-32-

are not analogous to the "stand alone" rule adopted by the Tennessee Supreme Court in *Camper* are simply inapposite to the case-at-bar.

Mr. Rye, based on the undisputed facts in the record, simply cannot show that he, himself, has suffered any physical injury or physical consequences from the Appellees' negligence, nor does he have an independent basis for tort liability in this case. The Tennessee Supreme Court has cautioned courts from finding exceptions to the rule expressed in *Camper* and *Estate of Amos*:

> Although sympathy for a particular plaintiff may tempt us to hold that certain circumstances "obviously" result in severe emotional injuries, we must also recognize that such a holding would subvert the principles set forth in Camper and would likely lead to the kind of ad hoc decisions that originally made [negligent infliction of emotional distress] case law unpredictable and incoherent. Furthermore, we do not believe the requirement that a severe emotional injury be proven by expert medical or scientific evidence is unduly burdensome to those plaintiffs who have suffered legitimate "stand-alone" emotional injuries.

*Flax*, 272 S.W.3d at 531. Accordingly, the trial court did not err in concluding that Mr. Rye's claim for emotional distress is a "stand alone" claim requiring expert proof to prevail at trial.

Having concluded that Mr. Rye's claim for emotional distress claim was properly deemed a "stand alone" claim by the trial court, the Appellees urge this Court to affirm the trial court's grant of summary judgment to the Appellees based on Mr. Rye's failure to submit expert proof in support of his claim. This we cannot do. This Court recently considered a similar issue in *Boals v. Murphy*, No. W2013-00310-COA-R3-CV, 2013 WL 5872225 (Tenn. Ct. App. Oct. 30, 2013). In *Boals*, the plaintiffs filed an action for emotional distress after their mother was improperly cremated against their wishes. The trial court granted summary judgment in favor of the defendant, finding that the plaintiffs' claims were "stand alone" claims for infliction of emotional distress. The trial court further ruled that because the plaintiffs had failed to seek treatment or otherwise offer any expert proof to support their emotional distress claims, the claims must fail. This Court reversed on the basis of the high burden the *Hannan* opinion sets for summary judgment cases. The Court explained:

> [R]egardless of whether the Plaintiffs will be required to submit expert proof on their claims at trial, the *Hannan* standard precludes a grant of summary judgment on the Plaintiffs' "various negligence claims" on the basis that the Plaintiffs

failed—at the summary judgment stage—to present such proof. In the case at bar, the trial court granted summary judgment in favor of [the defendant] because the Plaintiffs had not yet submitted expert proof of their serious or severe emotional injury. Under *Hannan*, a party who moves for summary judgment cannot "negate" an element of the nonmoving party's claim simply by noting that the nonmoving party has no evidence to prove the element. Under that circumstance, the moving party has not "disprove[d] an essential factual claim" made by the plaintiff, and therefore has not shifted the burden to the plaintiff. *White* [*v. Target Corp.*], [No. W2010-02372-COA-R3-CV,] 2012 WL 6599814, at *7 [(Tenn. Ct. App. Dec. 18, 2012)] (quoting *Martin* [*v. Norfolk So. Rwy. Co.*], 271 S.W.3d [76,] 84 [(Tenn. 2008)]). In general, as we interpret the holding in *Hannan*, it will not suffice to simply point out that the nonmoving party has no evidence to support his claim:

> Under *Hannan*, as we perceive the ruling in that case, it is not enough to rely on the nonmoving party's lack of proof even where, as here, the trial court entered a scheduling order and ruled on the summary judgment motion after the deadline for discovery had passed. Under *Hannan*, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support her claim.

> *Id.* at *7 n.3. Thus, a grant of summary judgment is not appropriate on the basis that the plaintiff has not yet submitted sufficient evidence to support each element of his claim.

*Boals*, 2013 WL 5872225, at *14–15.

The same is true in this case. The trial court properly concluded that Mr. Rye's claim for negligent infliction of emotional distress is a "stand alone" claim, requiring expert proof to prevail **at trial**. However, the trial court failed to properly consider the high burden of the *Hannan* standard in concluding that Mr. Rye's failure to submit expert proof, **prior to trial**, was fatal to his claim. Based on the holding in *Boals*, we conclude that Mr. Rye's failure to submit expert proof to support his negligent infliction of emotional distress claim prior to the trial in this case is not sufficient to support a grant of summary judgment. The trial court's

-34-

ruling on this issue is, therefore, reversed.

## Conclusion

The judgment of the Circuit Court of Shelby County is affirmed in part, reversed in part, and remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs are taxed one-half to Appellants Michelle Rye and Ronald Rye, and their surety, and one-half to Appellees, Women's Care Center of Memphis, MPLLC, d/b/a Ruch Clinic, and Diane Long, M.D., and their surety,[17] for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[17] Because both parties in this case filed Applications for Permission to file an Interlocutory Appeal, both parties filed surety bonds with this Court.